UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-24310-CIV-GRAHAM/GOODMAN

KENDALL LAKES TOWERS
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

PACIFIC INSURANCE COMPANY,
LIMITED,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendant, Pacific Insurance Company, Limited's, motion to dismiss due to discovery violations (DE 60), filed October 21, 2011. The Plaintiff, Kendall Lakes Tower Condominium Association, Inc., filed a response to the motion (DE 67), and Pacific filed a reply (DE 78). The Court carefully reviewed and considered the motion, the associated briefing and the pertinent portions of the record, and held a hearing on the motion on November 29, 2011.

Although the motion is captioned as a motion to dismiss, it is technically a motion for sanctions under Federal Rule of Civil Procedure 37. The Undersigned has jurisdiction under the standing order of reference for sanctions motions entered in this case (DE 19). Because a dispositive sanction, such as outright dismissal, is not warranted in this instance, the Undersigned may enter a final order on the motion rather than a report and recommendations. *See Gomez v. Martin Martin Marietta Corp.*, 50 F.3d 1511, 1519-20

(10th Cir. 1995) (magistrate judge may enter final order on sanctions motion so long as the order does not impose dispositive sanctions).

## BACKGROUND

This is an insurance coverage dispute arising out of alleged damages to Kendall Lakes Towers' property caused by Hurricane Wilma in October 2005. Discovery closed on October 14, 2011. One week later, Pacific Insurance Company filed this motion asking the Court to strike Kendall Lakes Towers' pleadings and dismiss this action as a result of Plaintiff's alleged discovery violations. The Court previously held one discovery conference in this case on unrelated matters initiated by the plaintiff. But before filing this motion the defendant never sought any court intervention in the discovery process.

Pacific did not first file a motion to compel or otherwise bring the plaintiff's purported discovery failures at issue in its motion to dismiss to the Court's attention at a discovery calendar hearing. Instead, Pacific first brought Plaintiff's alleged discovery violations to the Court's attention by requesting the most extreme sanction available. Setting aside this unusual strategy, filing a motion to dismiss as a discovery sanction without first seeking preliminary relief (which is the situation here) may run afoul of Local Rule 26.1(h)(1) of the Local Rules of the Southern District of Florida, which provides:

> All motions related to discovery, including but not limited to motions to compel discovery and motions for protective order, *shall be filed within thirty (30) days of the occurrence of grounds for the motion.* Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought. (emphasis added).

Because this motion is *related* to discovery, the 30-day deadline listed in the rule would seem to apply. On the other hand, many of the plaintiff's alleged discovery violations occurred within 30 days of the motion, and the rule's 30-day deadline does not preclude relief for these violations. As a matter of general practice, however, it is generally inadvisable to request the most extreme relief available even if it is technically permitted by the governing procedural rules.

Rule 26.1(h)(1) reflects a policy of promoting the prompt resolution of discovery disputes by requiring the parties to timely bring to the court's attention matters that the parties cannot resolve amongst themselves. The Local Rule does not expressly preclude a *sanctions* award when there is a failure to file a motion to compel within the specified time period. Nevertheless, common sense dictates that failures in the discovery process will not ordinarily result in dismissal, a remedy which the Eleventh Circuit has a described a sanction of last resort, *United States v. Certain Real Property Located at Route 1, Brant, Alabama*, 126 F.3d 1314, 1317 (11th Cir. 1997), if the injured party does not *first* seek relief though a standard discovery remedy, such as a motion to compel or scheduling the dispute for a discovery calendar hearing. Of course, there may be some discovery abuses that are so egregious as to justify dismissal without first filing a motion to compel, but this motion to dismiss is certainly not such a situation.

As a practical matter, when parties use the established avenues for obtaining discovery relief, it will often mitigate the need to later file a sanctions motion because the parties are required under the Federal Rules of the Civil Procedure and the Local Rules of this District to confer in good faith before seeking court intervention in the discovery process. If the parties cannot agree despite their good faith efforts to do so, then the court

may intervene and enter an appropriate order requiring the offending party to comply with its discovery obligations. If the offending party *still* refuses to comply, then the court is in a better position to determine whether the party has acted in bad faith and whether more severe sanctions are necessary.

The defendant did not follow this approach here.[1] In the Court's view, the defense strategy behind this motion to dismiss put the cart before the horse and short-circuited the discovery and sanctions process. To use a musical reference, defendant's discovery approach ignored the teachings articulated by singer-songwriter Meat Loaf, in his 1984 song, "Jumpin' The Gun:"

> Heaven blesses those who wait, patience is a virtue, son
>
> Keep your toe on the line, keep your foot on the brake
>
> No sense jumpin' the gun[2]

---

[1] In fact, at the hearing, defense counsel suggested that if this motion is denied, the defense will then seek to reopen the discovery period.

[2] http://www.elyricsworld,com/jumpin_the_gun_lyrics_meat_loaf.html (last visited December 1, 2011). The song is from the Meat Loaf album 'Bad Attitude." http://www.last.fm/music/Meat+Loaf/Bad+Attitude (last visited December 1, 2011). Born Marvin Lee Aday in 1947, Meat Loaf made his film debut with a role in the cult movie "The Rocky Horror Picture Show" in 1975. Two years later, he released an operatic rock album entitled "Bat Out of Hell," which has now sold more than 35 million copies worldwide. Despite his famous moniker, the singer-songwriter-performer does not like to eat meatloaf. He continues to perform on stage and in movies and television, and he was recently seen on TV's "Celebrity Apprentice," where he mentioned that he has suffered 18 concussions. http://www.imdb.com/name/nm0001533/bio (last visited December 2, 2011).

The idiomatic phrase used in "jump the gun" means "to do something too soon" or "before it should be done." The phrase originated in a literal way from its usage in track and field events, when the term meant "to begin to run a race before the gun that signals the start has been shot." http://idioms.thefreedictionary.com/jump+the+gun (last visited December 1, 2011).

It is abundantly clear that lesser relief, such as seeking an order compelling discovery responses, reopening the discovery period or supplementing the summary judgment briefing, would have been more than sufficient to protect the defendant from the alleged harm. Pacific could also have requested less-severe sanctions, such as asking the court "inform the jury of the party's [discovery] failures" under Rule 37(c)(1)(B). It is also apparent that some of these issues could have been avoided completely if defense counsel engaged in the type of communication and cooperation with opposing counsel that is necessary to maintain a smooth discovery process. *See* Appendix A to Local Rules, Discovery Practice Handbook  I(A)(1) ("Courtesy suggests that a telephone call is appropriate before taking action that might be avoided by agreement of counsel."). Indeed, at the hearing on this motion, plaintiff's counsel readily made numerous discovery concessions and gave many explanations regarding the disputed discovery issues that defense counsel admitted he was hearing for the first time.

To provide one concrete illustration of how Pacific could have obtained relief earlier on, Plaintiff's response to Interrogatory 2, served on June 22, 2011, was woefully inadequate. The interrogatory is a standard one, seeking, among other things, the identification of all persons with knowledge of "any of the issues raised by the pleadings." Plaintiff objected to the interrogatory as "ambiguous and overbroad" and then said it "is not in possession of any statements from any witness at this time." This type of interrogatory is so commonly used that the Standard Form Interrogatories found in Appendix B to the Local Rules for the United States District Court for the Southern

---

In the securities markets, the term also means "trading on information which has not yet been revealed to the public." http://www.investorwords.com/2680/jumping_the_gun.html (last visited December 1, 2011).

District of Florida list this type of interrogatory. Specifically, Standard Form Interrogatory 1 asks for the name, address, telephone number, place of employment and job title of any fact witness and Interrogatory 2 asks for the specific nature and substance of each person's knowledge.

Plaintiff did not provide a sufficient response to this basic interrogatory. First, the interrogatory is not, as Plaintiff contended in its objection, ambiguous and overbroad. To the contrary, it largely parrots the very interrogatories that this district court approved of in its Standard Form Interrogatories. Second, Plaintiff did not list **any** witnesses in its answer. Instead, it merely said that it did not currently possess any witness statements. Although this answers a *part* of the interrogatory, it completely avoids the other portion seeking the identification of fact witnesses, *regardless of whether they provided a statement*.

This omission was substantial and should have been obvious to the attorney who read the incomplete response. Thereafter, Pacific should have contacted Plaintiff's counsel immediately and demanded a proper answer. Because there were surely *some* fact witnesses that Plaintiff knew about when it submitted its interrogatory answer, Plaintiff would have been hard-pressed to maintain its objection. Thus, Pacific likely would have obtained witness information had it bothered to follow up originally. And if Plaintiff failed to provide the witness information, then Pacific could have brought the discovery dispute to the Court's attention and the Undersigned would have compelled responses.

But, as noted, Defendant Pacific did nothing about this incomplete interrogatory answer for months and then finally filed this motion to dismiss, leaping over other available remedies and for the ultimate sanction of dismissal.

Given the relief that the defendant is seeking, the Court's task in deciding this motion is not, ultimately, to parse each individual discovery dispute and determine what should or should not have been done in each instance -- because the defendant is seeking dismissal with prejudice, a sanction of *last resort*, and the Court's task is to determine whether the plaintiff's misconduct is commensurate with such a heavy penalty. At bottom, the motion must be denied because the plaintiff's discovery conduct in this case falls well short of the bad-faith conduct needed to sustain a sanction as severe as dismissal. Defendant could have obtained less-drastic relief in many instances had it timely raised its objections with Plaintiff's discovery responses and disclosure obligations. Finally, even if bad faith were shown, the harm caused to the defendant does not appear to be significant enough to warrant dismissal as a sanction when lesser remedies would surely suffice.

## **RELEVANT RULES OF CIVIL PROCEDURE**

Pacific moves for sanctions under Rules 37(b), 37(c), and 37(d). Pacific does not allege that Kendall Lakes disobeyed any court orders, which means that sanctions are not available under Rule 37(b). Pacific also seeks dismissal of the plaintiff's complaint and striking the plaintiff's pleadings for failure to disclose or supplement information and witnesses as required by Rule 26(a) and 26(3). Rule 37(c) permits this relief even where no party has violated a court order. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii),(v); 37(c)(1)(C). Rule 37(c) provides in relevant part:

> (1) ***Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

A party's underlying duty to disclose witnesses with relevant information is found in Rule 26(a)(1)(A)(i), which provides in relevant part that

> [A] party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]

The duty to supplement disclosures is described in Rule 26(e)(1)(A):

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Pacific also seeks dismissal and an order striking Plaintiff's pleadings as sanctions under Rule 37(d)(1)(A)(i), which provides in relevant part that "The court where the action is pending may, on motion, order sanctions if: a party or a party's officer, director, or managing agent — or a person designated under Rule 30(b)(6) or 31(a)(4) — fails, after being served with proper notice, to appear for that person's deposition."

8

## **STANDARD FOR SEVERE DISCOVERY SANCTIONS**

Although district courts possess wide discretion over the discovery process and in meting out discovery sanctions, a district court may only impose a severe sanction, such as dismissal of an action, when it has been established that the offending party's failure to comply with its discovery obligations is due to the party's willfulness, bad faith, or fault. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640 (1976); *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958). Simple negligence, misunderstanding, or inability to comply does not justify severe sanctions. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1539, 1542 (11th Cir. 1993). The Supreme Court has identified the need to punish the offender and a desire to deter similar conduct in future cases as the dual policies justifying the imposition of severe sanctions for willful discovery violations. *National Hockey League*, 427 U.S. at 643.

Unlike with discovery failures leading to lesser sanctions, district courts will ordinarily impose the severe sanctions listed in Federal Rule of Civil Procedure 37(b) only upon finding (1) that the party's failure to comply with the order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders. *See, e.g.*, *Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 571 (S.D. Fla. 2001); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 132 (S.D. Fla. 1987). Ultimately, however, the decision to award sanctions is a judgment call based on the court's gut reaction to the offending party's conduct in view of the court's years of litigation experience. *See Kale v. Combined Ins. Co.*, 861 F.2d 746, 758 (1st Cir. 1988) ("at its core imposition of sanctions is 'a judgment call.'"); *FDIC v. Tekfen Constr.*

*& Installation Co.*, 847 F.2d 440, 443 (7th Cir. 1988) ("Sanctions are ultimately a 'judgment call.'").

Once the movant makes a *prima facie* showing of a party's failure to comply with discovery obligations, the burden shifts to the party alleged to failed in its discovery duties to show that its actions were substantially justified or otherwise harmless. *See, e.g.*, *Parrish v. Freightliner, LLC*, 471 F. Supp. 2d 1262, 1268 (M.D. Fla. 2006).

## DISCUSSION OF ALLEGED DISCOVERY VIOLATIONS

The Court will now address each alleged discovery failure and analyze it under the prism of severe sanctions. Because Pacific's motion seeks only dismissal and an order striking the plaintiff's pleadings, the Court's analysis is limited to whether Kendall Lakes Towers acted in bad faith and whether the circumstances here justify a sanction-of-last-resort.

### I. *Failure to Disclose Involvement of Florida Tec and Brinson in Response to Interrogatories or as Part of Initial Disclosures*

First, Pacific claims that Kendall Lakes Towers failed to disclose the identity of a company called Florida Tec and one of its engineers, Marlin Brinson, who conducted tests on the subject property in November 2007 and prepared a report.

Pacific claims that Kendall Lakes should have disclosed Florida Tec and Brinson in response to several interrogatories and as part of Kendall Lakes' initial disclosures. Interrogatory 2 called for the plaintiff to list the names of all persons with knowledge concerning any of the issues contained in the pleadings. Interrogatory 3 called for the plaintiff to identify all persons who participated in the evaluation or repair process of any of the alleged damage in this case. Interrogatory 5 called for the plaintiff to identify all

repairs made on the subject property and identify the names of the entities involved in the repairs.

Kendall Lakes objected to interrogatory 2 on the ground that it was overbroad and responded that it was not in possession of any *statements* from any witnesses at the time. Pacific claims that Kendall Lakes Towers also failed to provide it with Brinson's report, which Pacific later acquired through a third-party subpoena. Pacific claims that this report supports its experts' views and that it was prejudiced because its experts could not reference the Brinson report in support of Pacific's summary judgment motion.

In response, Plaintiff contends that Pacific waived much of this argument because Pacific did not first seek relief within the period required by the Local Rules. Kendall Lakes Towers also states that *Pacific* identified Florida Tec as a person with knowledge in this case, so Pacific could not have been prejudiced by Kendall Lakes Towers' failure to disclose the same. Kendall Lakes Towers states that it did not know of the Brinson report until Pacific subpoenaed it and that Pacific was able to take Brinson's deposition after receiving his report. Plaintiff further contends that Pacific could have included the Brinson report as part of its own experts' rebuttal reports but chose not to file rebuttal reports.[3]

---

[3] Rule 37 does not permit sanctions for failing to adequately respond to interrogatories absent a court order requiring better answers. Kendall Lakes Towers is therefore correct that Pacific's failure to pursue an order compelling better answers to its interrogatories is fatal in this respect. On the other hand, Rule 37(c), read in conjunction with Rule 26(e), can support sanctions if a party fails to *supplement* an answer to an interrogatory if the supplemental information has not otherwise been made known to the opposing party. Rule 37(c) also permits sanctions for failing to adequately disclose witnesses or to supplement initial disclosures, without a court order. In the ordinary course of litigation, however, the Federal Rules appear to contemplate that a party will first file a motion to compel a required disclosure or otherwise bring the discovery dispute to the Court's attention before moving for extreme sanctions, such as dismissal.

The Court does not find that Kendall Lakes acted in bad faith here. Kendall Lakes gave a reasonable explanation for its alleged discovery failings, and its failure to learn of the Brinson report and to provide it earlier was at most negligent. It is also clear that dismissal is a disproportionate sanction under the circumstances. Pacific could have sought to reopen the discovery period, to supplement its summary judgment filings, or to advise the jury of the plaintiff's failure in order to cure the alleged prejudice here.

## II.  *Failure to Produce Documents in Hector Sicre's Custody*

Second, Pacific argues that Kendall Lakes Towers failed to produce inspection notes and a construction report by W&R Construction in connection with a deposition of Hector Sicre, who is the plaintiff's public adjuster. At Sicre's deposition, he stated that he could not testify about the specific apartments that he inspected and the precise observations on a unit-by-unit basis without his notes. He also testified that he relied on the W&R report in his damages calculation.

Kendall Lakes Towers responded that Sicre's file was turned over to Pacific before the deposition and that the W&R report was mistakenly omitted at first, but it was copied at the deposition when its absence came to light and immediately made available to Pacific's attorney. Plaintiff also stated that it produced the notes as soon as they were available. Additionally, Kendall Lakes Towers has agreed to continue expert discovery beyond the discovery cut-off date and to permit Pacific to complete Sicre's deposition. Accordingly, the Court does not find that Kendall Lakes Towers intentionally withheld these documents in bad faith or that Pacific has suffered sufficient prejudice to warrant dismissal.

---

*Cf.* Fed. R. Civ. P. 37(a)(3)(A) ("If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.").

### III.  *Failure to Disclose Prior Adjusters and Insurance Agent*

Third, Pacific claims that Kendall Lakes Towers did not produce the names of its first two adjusters in this case (prior to Sicre, who is the third adjuster). Pacific claims that it still does not know the name of the first adjuster.

Kendall Lakes Towers responds that it produced the name of the second adjuster but cannot produce any reports because that adjuster's computer records were destroyed. It also responds that it does not even know the name of the first adjuster because he was fired before doing any work (and was fire because he did not do any work). In all likelihood, the first adjuster was never paid and Kendall Lakes Towers says it has no records to identify him.

The Court finds that this was a substantial justification for failing to produce the name of the first adjuster and that there is no indication that Kendall Lakes Towers purposefully withheld this information in bad faith. Defense counsel replies that it *might* have been able to find out more about both adjustoes if it has learned information earlier in the litigation. In any event, neither party has provided the Court with sufficient information to conclude that Kendall Lakes Towers' first two adjusters even have knowledge or information relevant to the claims or defenses in this case. Additionally, Pacific never sought court intervention nor took other action that might have allowed it to learn this information earlier in the case. The prejudice that it might have suffered here is purely speculative (i.e., based on what Pacific *might* have learned from a timely disclosure).

### IV.     *Failure to Disclose "Mr. Nelson"*

Fourth, Pacific alleges that Plaintiff failed to disclose the existence of Nelson Romero, the insurance brokerage agent plaintiff allegedly notified of its claim. Notice of the claim is a key issue in this case and therefore Pacific contends that Kendall Lakes Towers should have disclosed Romero earlier. Nelson Romero was referred to as "Mr. Nelson" during the deposition of Julio Lago, a Kendall Lakes principal provided as Plaintiff's sole corporate representative for a Rule 30(b)(6) deposition. Romero is a critical fact witness in this case; plaintiff is using him to rebut the defense that Kendall Lakes Towers did not give Pacific proper, timely notice of its insurance claim. Because showing proper notice is actually an element of the plaintiff's claim, according to Pacific, Kendall Lakes Towers should have disclosed Romero in response to the initial interrogatories or as part of its Rule 26 disclosures.

Kendall Lakes Towers responds that it disclosed Romero in a supplemental disclosure provided *after* the discovery cut-off date and that it is willing to make him available for a deposition. Although this witness undoubtedly should have been disclosed earlier in the litigation, the Court does not find that Kendall Lakes Towers willfully failed to disclose Romero as a witness or that his belated disclosure justifies dismissing the plaintiff's case. Because Romero's testimony appears to support the *plaintiff's* position, Pacific cannot argue that it was prejudiced on summary judgment and, because Pacific will be able to take Romero's deposition by agreement, Pacific also cannot claim that it will be prejudiced at trial.

### V.     *Failure to Produce Roof Photographs Following Hurricane Wilma*

Fifth, Pacific claims that Kendall Lakes failed to timely produce photographs of the property taken following Hurricane Wilma by a company named Murton Roofing. These photos are relevant to this case because they are helpful to determining the extent of the damage caused by Wilma. Upon closer examination and following additional inquiry at the hearing, Pacific admitted that it received these photos but objected that Kendall Lakes Towers did not disclose who *took* them.

Kendall Lakes Towers explained at the hearing that Murton Roofing was later purchased by a company called TectaAmerica, which *Pacific* listed in its disclosures in February 2011. Kendall Lakes Towers also explained that these photographs were sent to it via email but that the email containing the pictures was not provided earlier as an oversight. Pacific responded that it never knew that TectaAmerican and Murton were the same company. This response is yet another illustration of how several of Pacific's discovery complaints here could have been resolved earlier in this litigation through diligent follow-up between counsel for the respective parties. In any event, assuming that Kendall Lakes Towers had the responsibility to turn over this email and accompanying information earlier in the case, the Undersigned does not find that it withheld this information in bad faith or that Pacific was meaningfully prejudiced as a result. Pacific has (and had) the photographs, and knowing the identity of the photographer may have been somewhat helpful but it does not appear to be critical.

### VI. *Failure to Produce a Competent Rule 30(b)(6) Witness*

Finally, Pacific claims that Kendall LakesTowers failed to produce a competent Rule 30(b)(6) witness. Rule 30(b)(6) provides that:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. **The persons designated must testify about information known or reasonably available to the organization.** This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules. (emphasis added).

Pacific frames the issue as one of Kendall's failure to provide the person with *the most knowledge* concerning the relevant issues, but this is not what Rule 30(b)(6) requires. Under the Rule, the deponent selected to be the designee **does not even need to have personal knowledge of the subject matter of the testimony** so long as he can *become* knowledgeable of information that is generally known to the organization through reasonable preparation. *See* 8A WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2103, at 455-57 (West 3d ed. 2010). Because Rule 30(b)(6) imposes an obligation *on the organization* to select an individual to testify, the party seeking discovery is not entitled to insist on a specific person as the corporate representative and it likewise cannot demand the testimony of a designee the with the "most" knowledge of a given matter. *See id.* at 477.[4]

---

[4] Pacific's 30(b)(6) notice ostensibly requires - 11 separate times, for 11 separate topics - the production of the "person with most knowledge" on the 11 issues. If the Rule actually required the person with the "most" knowledge to testify on each subject, then theoretically an entity might have to designate 11 different people to testify,

16

Nevertheless, it appears that the sole 30(b)(6) witness provided by Kendall Lakes Towers, Julio Lago, was unable to testify competently about certain fundamental issues listed in the Rule 30(b)(6) notice, such as the damage caused by Hurricane Wilma, the repairs made following Wilma, the repairs that are still required, and the cost of those repairs. Here again the Court does not find that Kendall Lakes Towers proffered Lugo's testimony in bad faith or to skirt its discovery obligations. Consequently, the Court will not recommend the extreme sanction of dismissal for this comparatively modest discovery failure, as Lago was able to provide testimony on many of the issues listed on the 30(b)(6) list.[5]

---

because each would be the most knowledgeable on a given topic. But because the recipient of a 30(b)(6) notice need not produce a representative with the "most" knowledge, or even with personal knowledge, a party can simply designate one or two individuals who have in whatever way obtained the requisite knowledge on the topics requested.

[5] Kendall Lakes Towers agreed to permit Pacific to complete the 30(b)(6) deposition with an additional hour's worth of questions. It is up to Plaintiff to designate the representative (or representatives) for the remaining issues. Therefore, Plaintiff is free to again designate Lago again (assuming that he is properly prepared to discuss the outstanding issues). The Court will not require Plaintiff to produce any *specific* person to fulfill that role, but the Court expects Plaintiff to make sure that the witness or witnesses are prepared to provide deposition testimony on behalf of Kendall Lakes Towers. Pacific also indicates that it may move to reopen the discovery period in this case and Kendall Lakes Towers indicated that it does not oppose that relief.

## **CONCLUSION**

Pacific's motion to dismiss as a sanction for discovery violations is **denied**. As noted, however, certain depositions will proceed by agreement.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on December 2, 2011.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Hon. Donald L. Graham
Counsel of Record