**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 10-24310-CIV-GOODMAN**

**[CONSENT CASE]**

KENDALL LAKES TOWERS
CONDOMINIUM ASSOCIATION, INC.,

      Plaintiff,

v.

PACIFIC INSURANCE COMPANY,
LIMITED,

      Defendant.
_____/

<u>**ORDER ON MOTION FOR SUMMARY JUDGMENT**</u>

This matter is before the Court on Defendant Pacific Insurance Company, Limited's motion for summary judgment or in the alternative for partial summary judgment (DE 57), filed October 21, 2011. The Court has reviewed and considered the motion and all associated briefing, the pertinent portions of the record and is otherwise duly advised. For the reasons set forth below, the motion for summary judgment is **denied** and the motion for partial summary judgment is **granted** on the issue of whether the plaintiff provided timely notice of its loss. The Court cannot enter final summary judgment based on the untimely notice, however, because it finds that there is a genuine issue of material fact as to whether Pacific was prejudiced by the late notice.

<u>I.</u>     <u>Background</u>

This is an insurance coverage dispute arising out of damages to Plaintiff Kendall Lakes Towers' property allegedly caused by Hurricane Wilma in October 2005.

Jurisdiction is based on diversity of citizenship.  Florida insurance law governs the substantive legal issues.

Pacific moves for summary judgment on three grounds.  The first two grounds relate to Kendall Lakes' alleged failure to satisfy conditions precedent under the insurance contract.  Specifically, Pacific argues that Kendall Lakes failed to promptly notify it of the damage and failed to submit to an under-oath examination as required under Section E of the insurance policy:

**E.     Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

*       *       *       *

**3.     Duties In The Event Of Loss Or Damage**

**a.**   You must see that the following are done in the event of loss or damage to Covered Property:

*       *       *       *

**(2)**   Give us prompt notice of the loss or damage.  Include a description of the property involved.

**(3)**   As soon as possible, give us a description of how, when and where the loss or damage occurred.

*       *       *       *

**(7)**   Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

**(8)**   Cooperate with us in the investigation or settlement of the claim.

2

> **b.** We may examine any Insured under oath, while not in the presence of any other Insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an Insured's books and records.  In the event of an examination, an Insured's answers must be signed.

Pacific's third ground for summary judgment is that Kendall Lakes lacks evidence of its damages because its sole expert report regarding damages was improperly submitted as a *rebuttal* report after the deadline for submitting expert reports passed.  In connection with its motion for summary judgment, Pacific also filed a motion to strike the rebuttal report.  However, in a separate order I denied the motion to strike and instead imposed certain cost-shifting mechanisms and time extensions to ameliorate any prejudice to Pacific (DE 98).  Because I did not ultimately strike the report, Kendall Lakes now has evidence of its damages and summary judgment cannot be granted on this ground.  I will therefore analyze below the defendant's two remaining arguments based on lack of prompt notice and failure to submit to an under-oath examination.

II.    Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, affidavits and exhibits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Allen,* 121 F.3d at 646.  On a motion for summary judgment, the court must view all the evidence and all

factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether the evidence could reasonably sustain a jury verdict for the non-movant. *Celotex*, 477 U.S. at 322-23; *Allen,* 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial." *Schechter v. Ga. State Univ.*, 341 Fed. Appx. 560, 562 (11th Cir. 2009). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough to defeat a properly supported motion for summary judgment. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

III.   Notice-Prejudice Analysis

Under Florida law, the insured's failure to provide "timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy." *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981). Policy provisions that require "timely notice" or "prompt notice" mean that notice must be given "within a reasonable time *in view of all the facts and circumstances of the particular case*." *Laster v. United States Fidelity & Guaranty Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974) (quoting *Employers Casualty Co. v. Vargas*, 159 So. 2d 875, 877 (Fla. 2d DCA 1964)).

Kendall Lakes argues that the question of prompt notice is a fact question for the jury.  Florida courts, however, have deemed notice to be untimely as a matter of law in circumstances where the insured provided substantially more notice than the four and a half years after the alleged loss event in this case.  *See, e.g.*, *Kroener v. Fla. Ins. Guar. Ass'n*, 63 So. 3d 914, 916 (Fla. 4th DCA 2011) ("we agree with the trial court's ruling that, as a matter of law, notice to the insurer of a claim of loss more than two years and two months after the loss occurred was not prompt notice; the untimely reporting of the loss violated the insurance policy and was sufficient to bar the claim").  Thus, the court can grant summary judgment on the issue of notice when the factual record does not support an argument that the delay was reasonable under the appropriate legal standard.

Failure to give timely notice creates a *presumption* that the insurer was prejudiced.  *Ideal Mut. Ins. Co*, 400 So. 2d at 786.  Once the issue of prejudice is properly injected into the case, the burden rests with the party seeking to impose liability, in this case the insured, to show that no prejudice occurred.  *See Deese v. Hartford Accident & Indem. Co.*, 205 So. 2d 328, 332 (Fla. 1st DCA 1967).  The insured may create a genuine issue of material fact by presenting evidence that rebuts the presumption of prejudice.  *Cf. Martinez-Claib v. Business Men's Assurance Co. of Am.*, 349 F. App'x 522, 526 (11th Cir. 2009) (affirming grant of summary judgment to insurer when insured did not sufficiently create a genuine issue of material on whether the evidence rebutted the presumption of prejudice).

A.    Notice

Pacific first argues that Kendall Lakes provided it with notice on or about May 29, 2009, four and a half years after Hurricane Wilma struck South Florida in October

5

2005.  In support of its contention, Pacific has provided documentation showing that Kendall Lakes retained Lesser and Company, Inc., a public insurance adjuster, in April 2009 and that in May 2009 Lesser and Company notified CRC Insurance Services, which acted as Pacific's authorized surplus lines insurance agent, of the loss (DE 59-7, 81-2).

Kendall Lakes contends that it provided timely notice and makes several arguments to supports its position.

First, Kendall Lakes argues that it did, in fact, provide prompt notice to Pacific by contacting Nelson Romero, whom Kendall Lakes identifies as Pacific's agent, within 72 of the loss allegedly caused by Wilma.  This argument is based on a declaration by Julio Lago, Kendall Lake's president, stating that within 72 hours following Hurricane Wilma he "contacted Nelson Romero of Tanenbaum Harber Insurance Group, an insurance agent for Pacific . . . ."  (DE 70-1).

Pacific responds that the undisputed record shows that Romero was *Kendall Lakes'* agent, not Pacific's.  According to Pacific, Tanenbaum is known as a "producing agent," meaning that it is hired by the *insured* and acts on its behalf (DE 81-2).  During a Rule 30(b)(6) deposition of Jeanne Alonso on behalf of Tanenbaum, Alonso acknowledged that Tanenbaum was the representative of Kendall Lakes, not Pacific (DE 101-1, at 8).  Kendall Lakes took the deposition of Romero, who never once claimed that he was *Pacific*'s agent.

The record evidence therefore shows that notice was given to Pacific via its agent CRC is May 2009, not in October 2005 as Kendall Lakes claims.  The only evidence offered in support of the contention that notice was provided in 2005 is the Lago declaration, which is entirely based a legal conclusion without any supporting factual

6

information and conflicts with the documentary record and with Tanenbaums's own Rule 30(b)(6) deposition. *See* Fed. R. Civ. P. 56(c)(4) (affidavit or declaration must be based on personal knowledge and set out facts that would be admissible evidence at trial on matters that the declarant is competent to testify about); *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) ("A nonmoving party, opposing a motion for summary judgment supported by affidavits cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial."). Accordingly, there is no genuine factual dispute that Kendall Lakes first provided notice to the insurer in May 2009 (because notice to Romero in 2005 was not notice to *Pacific)*.

Next, Kendall Lakes argues that even if it first provided notice in 2009, it was reasonable to do so under the circumstances because Kendall Lakes' initial assessment of the damage caused by Wilma was approximately $500,000, which did not meet the policy deductible. After Hurricane Wilma, Kendall Lakes repaired the roof on its own but the premises continued leaking and required periodic repairs with each subsequent rainy season. It was not until 2009 that Kendall Lakes eventually determined that the problems were structural in nature and were in fact attributable to Hurricane Wilma.

Under these circumstances, Kendall Lakes was not entitled to wait until it determined on its own that the damages in question exceeded the deductible amount or until it ascertained the precise cause of the damage. The insurance contract required that Kendall Lakes give notice of loss or damage, without regard for whether it intended to submit a claim or whether it determined that the loss was covered under the policy. When an insurance contract contains such a provision, the insured must give notice of a

loss that implicates a *potential* claim without waiting for the full extent of the damage to become apparent. *See Ideal Mut. Insur. Co*, 400 So. 2d at 785; *cf. National Gypsum Co. v. Travelers Indem. Co.*, 417 So. 2d 254, 256 (Fla. 1982) (prejudice will be assumed when the insured does not give notice of a *possible* claim). An insured is not relieved of its responsibility to provide notice simply because it engages in independent repairs. *See Ideal Mut. Insur. Co*, 400 So. 2d at 786. Similarly, an insured's good faith belief that the damage is trivial or not covered by the policy is insufficient to justify non-compliance with the policy's notice provision. *Deese*, 205 So.2d at 330, 332.

Kendall Lakes does not dispute that it was aware of significant damage to its property following Hurricane Wilma. Kendall Lakes also not does dispute that the damages totaled approximately $500,000. This was a considerable amount of damage, which raised a reasonable likelihood that coverage might be implicated under the policy. As a result, Pacific was entitled to prompt notice of the loss following Hurricane Wilma, not, as occurred here, to notice more than four years later. There is no genuine factual dispute that Kendall Lakes did not provide timely notice and Pacific is entitled to judgment as a matter of law on this issue.

Having determined that Pacific is entitled to partial summary judgment on the issue of notice, the Court will now address the question of prejudice.

B.      Prejudice

An insurer is prejudiced by untimely notice when "the underlying purpose of the notice requirement was frustrated by the late notice." 13 CROUCH ON INSURANCE § 192:28 (Thompson West 3d ed. 2005). By way of illustration, in *Tiedtke v. Fidelity & Casualty Co. of New York*, 222 So. 2d 206, 209 (Fla. 1969), the Florida Supreme Court

found that the insurer was **not** prejudiced by late notice when it only began investigating the claim several months after receiving the complaint and was able to take a written statement or deposition from every material witness prior to trial.  By contrast, in *Renner v. State Farm Mutual Automobile Insurance Co*, 392 F.2d 666, 667 (5th Cir. 1968), the court affirmed a finding of prejudice in an automobile accident case when, because of late notice, the insurer was unable to photograph the automobiles involved in the collision or to promptly interview the participants.  One of the participants in the accident died 19 days later and the court noted that the insurance company's inability to speak with him or his attorneys in order to negotiate a possible settlement prejudiced the insurer.  Thus, prejudice to the insurer results if the untimely notice substantially disadvantages the insurer's ability to (1) investigate a claim, (2) defend a claim, (3) or to mitigate damages through settlement or early repairs.  *Cf.* 13 CROUCH ON INSURANCE § 192:29 (prejudice is a substantial likelihood that the insurer could have prevailed in the underlying action or could have settled the claim for a smaller sum absent the untimely notice).  Prejudice is usually a question of fact, but can be a question of law when facts are not in dispute.  *Id.* at § 192:31; *see also Martinez-Claib*, 349 F. App'x at 526.

Pacific argues that Kendall Lakes cannot meet its burden to rebut the presumption of prejudice.  Pacific points to one of its experts, John Pepper, who states that because of the passage of time and the repairs and maintenance performed at Kendall Lakes' property after Hurricane Wilma, he was unable to attribute the cause of the damage to any specific event (DE 59-2, at 65).  In addition, he states that his ability to determine the extent of the overall damage was "severely lessened" in comparison to what it would have been had he been able to inspect the property without delay (Id. at 67).

9

In response, Kendall Lakes argues that despite Pepper's reservations about the passage of time, he stated during his deposition that he *was* able to conclude that Hurricane Wilma did not have sufficient force to cause the structural problems at issue. Pepper testified that the only hurricane that would have had sufficient force to cause the cracks that he observed was Hurricane *Andrew* (DE 99-2).  This somewhat undermines Pepper's conclusion in his report that the passage of time made it too difficult to adequately determine the cause of the damage.  At the very least, it tends to show that despite the passage of time Pepper was still able to rule out the one potential cause that is at the crux of this litigation--Hurricane Wilma.

Kendall Lakes also notes that neither of Pacific's other two experts mentioned any difficulty or problem because of the passage of time.  A report prepared by Pistorino & Alam Construction Engineers, Inc. found that the roof repairs were consistent with routine maintenance, that no hurricane damage was present, and that the overall condition of the roofing was consistent with routine aging (DE 59-3).  Another report prepared by Lee A. Swanger found that the condition of the doors and windows was consistent with 20 years of use, and in some cases neglect, but not with wind damage from Hurricane Wilma or another weather event (Id.).

Pacific contends that because prejudice is presumed in the case of late notice, its experts are not required to express difficulty in conducting tests in order to show prejudice.  But Kendall Lakes may nevertheless rely on evidence produced by Pacific, including its own expert reports, to sustain its burden of rebutting the presumption of prejudice, as it has attempted to do here.

Pacific also provided a sworn declaration by its claim handler, who states that as a result of the late notice, Pacific was unable to secure photographs and witness statements immediately following Hurricane Wilma.  Pacific was also unable to view the measures that Kendall Lakes took to prevent further damage, which is critical in determining the nature and extent of Pacific's coverage obligations.  The passage of time made it much more difficult to resolve many questions regarding the extent of damage that may have been caused by Hurricane Wilma because Pacific could not determine whether other weather events, poor maintenance, or wear and tear might have caused or contributed to the damage in question (DE 81-3).

Pacific additionally notes that none of its experts were able to evaluate the building in the state that it was in following Hurricane Wilma because of the intervening repairs conducted by Kendall Lakes.  Pacific further contends that Kendall Lakes cannot show the absence of prejudice because Pacific is unable to specify the exact cause of the damage and to evaluate Kendall Lakes' efforts to mitigate the loss.  Under this line of reasoning, Pacific's experts, especially Pepper, would presumably be vulnerable to criticisms at trial that they did not inspect the building immediately following Hurricane Wilma and were not more precise in determine what *did* cause the damage, rather than simply ruling Hurricane Wilma out.

In view of all the evidence, it cannot seriously be disputed that the late notice prevented Pacific from investigating the claim immediately following Hurricane Wilma, when it would have been in the best position to determine the cause and extent of the damage.  Without doubt, the extended passage of time creates a very strong inference that Pacific's investigation and defense have been substantially diminished as a result of the

late notice.  Additionally, because Kendall Lakes made repairs without first notifying Pacific, Pacific was unable to monitor or to cooperate with those repairs and to determine what efforts Kendall Lakes undertook to mitigate its damages.

Nevertheless, the record *also* contains evidence that tends to support Kendall Lakes' argument that Pacific was able to conduct a sufficient investigation under the circumstances.  Thus, before arriving at the conclusion that Kendall Lakes cannot rebut the presumption of prejudice the record evidence must ultimately be weighed and inferences drawn against Kendall Lakes, the non-movant.

For example, according to Pepper's deposition testimony, the cracks in the structure would not have been immediately visible after the cracking occurred and would only have become visible over time with weathering and aging.  Based on this testimony and the surrounding circumstances, a reasonable jury could conclude that despite the delay, Pacific was still able to conduct tests and measurements and to rule out Hurricane Wilma as the cause of the damage.  Moreover, a rational jury could also infer from this testimony that because the cracking only became visible with the passage of time, an examination of the structure immediately following Hurricane Wilma would not have made a measurable difference in the investigation.

But in order to find that Kendall Lakes cannot rebut the presumption of prejudice, the Court must infer that the delay in investigating the damage to Kendall Lakes was consequential in the analysis of causation.  This precludes the entry of summary judgment.  Summary judgment can only be entered if no rational jury could find for Kendall Lakes on this issue despite drawing all reasonable inferences in its favor.  *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) (on motion for

summary judgment, district court is not "to undertake credibility determinations or weigh the evidence"); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) ("the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes").

As a result, whether a prompt investigation would have enabled Pacific to determine the cause of the damage with greater certainty or to take steps to mitigate damages and, if so, whether Pacific was placed at a substantial disadvantage as to be prejudiced by the delay, present genuine questions of material fact that cannot be resolved on a motion for summary judgment.[1]

<u>IV.</u>    <u>Oath of Examination Analysis</u>

Finally, Pacific moves for summary judgment on the grounds that Kendall Lakes failed to submit to an under-oath examination, as required by the policy.  In Florida, the "insured's refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery

---

[1]    In a memorandum submitted on the summary judgment issue, Pacific referred to the song "Turn! Turn! Turn" and focused on the following lyric to demonstrate its point that the time for Plaintiff to have provided notice had long since passed: "to everything there is a season, and time to every purpose, under Heaven."  While the reference is perfectly appropriate for the issue of whether Plaintiff acted in time when providing notice of the loss, it does not have similar applicability to whether Pacific is entitled to summary judgment.

Pacific's motion is premature and Pacific is advised to heed the words of Ralph Waldo Emerson: "patience and fortitude conquer all things" and "adopt the pace of nature,                her                secret                is                patience." http://www.famousquotesandauthors.com/authors/ralph_waldo_emerson_quotes.html (last visited Jan. 30, 2012).  Alternatively, Pacific's position is aptly (but perhaps repetitively) described by The Hollies, in the group's 1975 song "Give Me Time," from the "Another Night" album: "Give me time, Give me time, give me time, You gotta give time, Give me time, give me time."  http://thehollies.lyrics.info/givemetime.html (last visited Jan. 30, 2012).

under the policy." *Goldman v. State Farm Fire Gen. Ins. Co.*, 660 So. 2d 300, 303 (Fla. 4th DCA 1995).

Pacific admits that Kendall Lakes agreed to provide an under-oath examination but argues that the agreement was illusory and that Pacific could not conduct a meaningful examination without first receiving certain documents that Pacific had requested.  The record, however, shows that Kendall Lakes provided substantial documentation and information related to its claim.  Additionally, Pacific's refusal to go forward with the examination cannot *ipso facto* be equated with Kendall Lakes' refusal to cooperate with the examination.  The policy required Kendall Lakes to cooperate with Pacific and to submit to an examination under oath; it did not provide Pacific with an unfettered right to place conditions on the examination.  Accordingly, whether Kendall Lakes failed to cooperate with Pacific in good faith by refusing to provide Pacific with sufficient documentation and information to enable it to conduct a meaningful under-oath examination presents a genuine question of material fact that precludes the entry of summary judgment.

V.   Conclusion

Pacific's motion for partial summary judgment is **granted** on the issue of failure to provide prompt notice and is **denied** in all other respects.  At trial, the Court will instruct the jury that Kendall Lakes did not provide timely notice of its loss to Pacific.

**DONE AND ORDERED** in Chambers, at Miami, Florida, January 30, 2012.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

14

Copies furnished to:
All Counsel of Record